**IN THE UNITED STATES DISTRICT**
**FOR THE SOUTHERN DISTRICT OF IOWA**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **AUSTIN HARDWARE & SUPPLY, INC.,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.:** |
| | ) | |
| **FORZA, INC.,** | ) | |
| **Serve Registered Agent:** | ) | |
|     **Michael J. Glenn** | ) | |
|     **3211 Nebraska Ave., Suite 300** | ) | |
|     **Council Bluffs, IA 51501** | ) | |
| | ) | |
| **FORZA HOLDINGS, INC.,** | ) | |
| **Serve Registered Agent:** | ) | |
|     **Michael J. Glenn** | ) | |
|     **3211 Nebraska Ave., Suite 300** | ) | |
|     **Council Bluffs, IA 51501** | ) | |
| | ) | |
| **FORZA IP, INC.,** | ) | |
| **Serve Registered Agent:** | ) | |
|     **Michael J. Glenn** | ) | |
|     **3211 Nebraska Ave., Suite 300** | ) | |
|     **Council Bluffs, IA 51501** | ) | |
| | ) | |
| **FORZA MANAGEMENT, INC.,** | ) | |
| **Serve Registered Agent:** | ) | |
|     **Michael J. Glenn** | ) | |
|     **3211 Nebraska Ave., Suite 300** | ) | |
|     **Council Bluffs, IA 51501** | ) | |
| | ) | |
| **FORZA OPERATING, INC.,** | ) | |
| **Serve Registered Agent:** | ) | |
|     **Michael J. Glenn** | ) | |
|     **3211 Nebraska Ave., Suite 300** | ) | |
|     **Council Bluffs, IA, 51501** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**<u>VERIFIED COMPLAINT AND JURY DEMAND</u>**

Plaintiff Austin Hardware & Supply, Inc. ("Austin Hardware" or "Plaintiff"), for its

Complaint against Defendant Forza, Inc. ("Forza"); Defendant Forza Holdings, Inc., Defendant

Forza IP, Inc., Defendant Forza Management, Inc., Defendant Forza Operating, Inc., (collectively the "Other Forza Companies"; together with Forza, the "Defendants") (collectively the "Parties"), states as follows:

## I.     THE PARTIES

1.     Plaintiff Austin Hardware & Supply, Inc. is a Missouri corporation with its principal place of business at 950 N.W. Technology Dr., Lee's Summit, MO 64086.

2.     Austin Hardware is a family-owned and operated company which was built around people and valued relationships.  The company was founded on the values of hard work, dedication and commitment.

3.     Austin Hardware provides high-quality industrial-grade products and innovative solutions to its customers.  Among other things, Austin Hardware supplies adhesive products to customers in the transportation and emergency response vehicle industries. These adhesive products are often used for the installation and/or production of components for ambulances, commercial vehicles, and trailers.

4.     Defendant Forza is an Iowa corporation which has transacted business in Iowa and Missouri with Austin Hardware; has committed unlawful tortious acts against Austin Hardware in Iowa and Missouri, and has entered into written agreements with Austin Hardware in Iowa and Missouri.

5.     Defendant Forza Holdings, Inc., is an Iowa corporation which has transacted business in Iowa, has committed unlawful and tortious acts against Austin Hardware in Iowa and Missouri, and has a home office of 3211 Nebraska Avenue, Suite 300, Council Bluffs, IA, 51501. Forza Holdings, Inc., was formerly known as Applichem, Inc.

6.      Defendant Forza IP, Inc. is an Iowa corporation which has transacted business in Iowa, has committed unlawful and tortious acts against Austin Hardware in Iowa and Missouri, and has a home office of 3211 Nebraska Avenue, Suite 300, Council Bluffs, IA, 51501.

7.      Defendant Forza Management, Inc. is an Iowa corporation which has transacted business in Iowa, has committed unlawful and tortious acts against Austin Hardware in Iowa and Missouri, and has a home office of 3211 Nebraska Avenue, Suite 300, Council Bluffs, IA, 51501.

8.      Defendant Forza Operating, Inc., is an Iowa corporation which has transacted business in Iowa, has committed unlawful and tortious acts against Austin Hardware in Iowa and Missouri, and has a home office of 3211 Nebraska Avenue, Suite 300, Council Bluffs, IA, 51501.

9.      The Defendants all share the same home office and registered agent that gives rise to a reasonable and plausible inference of commonality of ownership and interest.

10.     One of the agreements into which Austin Hardware and Forza entered is a Supply Agreement dated April 7, 2023 (the "Supply Agreement") Attached as Exhibit A.

11.     Under the Agreement, Defendant Forza agreed to sell and supply certain adhesive products to Austin Hardware for distribution to Austin Hardware's customers subject to Austin Hardware accepting Forza's quote.

## II.      JURISDICTION AND VENUE

12.     Personal jurisdiction is appropriate in the State of Iowa over Forza because Forza has transacted business in the State of Iowa, has entered into contracts in the State of Iowa, has committed tortious acts in the State of Iowa and has contacts with the State of Iowa which supports jurisdiction consistent with the constitutions of the United States and the State of Iowa.

13.     Personal jurisdiction is appropriate in the State of Iowa over the Other Forza Companies because the Other Forza Companies have transacted business in the State of Iowa, have

93415081.7

committed unlawful and tortious acts in the State of Iowa and have contacts with the State of Iowa which supports jurisdiction consistent with the constitutions of the United States and the State of Iowa.

14.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states and the amount in controversy exceeds $75,000.00.

15.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because at least one claim is based on a federal question; specifically, Austin Hardware's cause of action brought pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836 et seq.

16.     This Court has supplemental subject matter jurisdiction over the remaining claims pursuant to 28 U.S.C. § 1367.

17.     This Court has personal jurisdiction over Austin Hardware and Forza pursuant to their consent to personal jurisdiction of this Court in Paragraph 8 of the Supply Agreement. Ex. A, ¶ 8.

18.     This Court has personal jurisdiction over the Other Forza Companies because the Other Forza companies have transacted business in the State of Iowa, have committed unlawful and tortious acts in the State of Iowa and have sufficient minimum contacts with the State of Iowa which supports jurisdiction consistent with the constitutions of the United States of America and the State of Iowa.

19.     Venue is proper in this district pursuant to 28 U.S.C. § 1391, pursuant to the Supply Agreement, Ex. A, ¶ 8, and because Forza and the Other Forza Companies are located in Council Bluffs, Iowa which is located Pottawattamie County and the Western Division of the United States District Court for the Southern District of Iowa.

93415081.7

### III.    ADDITIONAL ALLEGATIONS COMMON TO ALL COUNTS

#### A.  Austin Hardware's Business and Confidential / Trade Secret Information

20.    One of Austin Hardware's tenets is its dedication to understanding the unique needs of its various customers and working together to achieve the customer's goals.

21.    As part of its business, Austin Hardware supplies a non-flammable adhesive glue cannister product that is considered to be a faster drying and easier setting product than others in the market.

22.    Some of Austin Hardware's customers use this product for the installation of flooring in emergency response vehicles and trailers.

23.    One of Austin Hardware's other customers uses this product in connection with the manufacturing of seats for vehicles.

24.    Austin Hardware has used this product to solicit customers to help grow its sales of other products as well.

25.    The cost and pricing of Austin Hardware's products is confidential and proprietary trade secret information which Austin Hardware does not make readily available to the public.

26.    Likewise, Austin Hardware's pricing, price points, revenue, charges, and margins, are confidential and proprietary trade secrets, which are not readily available to the public.

27.    Over the years, Austin Hardware has spent great time, expense and money developing distributor, customer, and vendor relationships.

28.    Austin Hardware's lists of customers and accounts, customer contact information and price lists are also confidential and proprietary trade secrets.

93415081.7

29.    Austin Hardware spends a great deal of time developing and fostering these customer relationships to better understand its customers' needs and goals so that Austin Hardware can provide quality products that fit the customers' needs at a competitive cost.

30.    Austin Hardware takes reasonable efforts to maintain the confidentiality of its confidential and trade secret information: Austin Hardware's standard practice is for vendors and suppliers to sign non-disclosure agreements; Austin Hardware's confidential and trade secret information is maintained in secure locations; Austin Hardware limits access to such confidential and trade secret information to only those individuals with a need to know such information in the performance of their duties and responsibilities; Austin Hardware requires employees to sign agreements to protect and not disclose its confidential and trade secret information; and Austin Hardware limits profiles to confidential and trade secret information which are  password-protected.

B.    **Confidential Information Exchange and Supply Agreement Between Austin Hardware and Forza**

31.    During 2022, Austin Hardware was looking for a supplier of commercial VHB (very high bond) tape to provide to its customers.

32.    After learning of Forza, Austin Hardware invited Forza to Austin Hardware's offices in Missouri to make a presentation to Austin Hardware.

33.    On March 21, 2022, Austin Hardware and Forza entered into a Mutual-Non-Disclosure Agreement (the "NDA") to exchange information to determine whether Forza could supply Austin Hardware with products that would help Austin Hardware's customers achieve their goals. Ex. B.

93415081.7

34.     Austin Hardware and Forza agreed in the NDA that "Confidential Information of a Party might include, but is not limited to that Party's: (1) business plans, methods, and practice; (2) personnel files, customer lists and records." Ex. B.

35.     Austin Hardware and Forza further agreed that each party "shall not use said information for any purpose other than as permitted and intended by the disclosing party." Ex. B. Paragraph 2.

36.     In April 2022, representatives from Austin Hardware visited Forza where representatives from Forza put on a presentation to Austin Hardware about an alleged VHB commercial tape that Forza could supply Austin Hardware and in turn, Austin Hardware's customers.

37.     As part of the presentation, Forza showed Austin Hardware other products it could allegedly supply Austin Hardware, including a certain spray adhesive glue product.

38.     Following the presentation, Austin Hardware requested information about the spray adhesive so that Austin Hardware could consider the product as a potential offering to its existing customers.

39.     Austin Hardware took Forza representatives to visit several of its customers to supply the tape.

40.     The tape failed testing for almost all of Austin Hardware's customers. Austin Hardware, however, was still willing to consider selling the Forza supplied spray adhesive to its customers.

41.     On June 8, 2022, representatives from Forza came to Austin Hardware's facility in Missouri for a "Lunch and Learn Presentation" to further present on Forza's VHB tape and provide more detail regarding the spray adhesive product.

42.     Austin Hardware and Forza ultimately decided to enter a business relationship with each other, with Forza committing that Austin Hardware would be the "exclusive Transportation and Trailer market distributor."

43.     On April 7, 2023, Austin Hardware and Forza entered into the Supply Agreement. Ex. A.

44.     Under the Supply Agreement, Forza acknowledged that, prior to and as a result of Forza providing services under the Supply Agreement, _Forza_ would be provided access to and make use of Austin Hardware's Confidential Information. Ex. A, ¶ 10(a).

45.     Also under the Supply Agreement, Forza promised not to disclose or use Austin Hardware's confidential information other than as contemplated by the Supply Agreement and without the express written consent of Austin Hardware. Ex. A, ¶ 10(a).

46.     The Supply Agreement does not contain similar language concerning any alleged confidential information of Forza. _See generally_, Ex. A.

47.     Indeed, the Supply Agreement specifically notes that "[a]ll Confidential Information (including in electronic form), is the exclusive property of Austin Hardware." Ex. A, ¶ 10(c).

48.     Pursuant to the Supply Agreement, Confidential Information is defined as:

> Austin Hardware's lists of customers and accounts, products, systems, procedures, customer contact information, lists of identity of key personnel assigned to accounts, price points, business goals, business techniques, policies, manuals, advertising, marketing plans, business and marketing strategies, trade secrets, business plans, financial data, strategies, methods of conducting business, price lists, formulas, processes, procedures, standards, know-how, manuals, techniques, technology, confidential reports and all other information, knowledge, or data of any kind or nature relating to the Business, the Company or any subsidiary, parent or other affiliate of Austin Hardware. Ex. A, ¶ 10(a).

93415081.7

49.    Importantly, Forza also agreed and promised, *unconditionally*, not to sell competing or similar products to Austin Hardware's customers after the termination of the Supply Agreement: "If/when this agreement is terminated, Forza shall not sell competing or similar products to Austin Hardware customers."  Ex. A, ¶ 10(a).

50.    Pursuant to paragraph 10(b) of the Supply Agreement:

> Forza covenants and agrees that he shall not, at any time during or following the term this Agreement or subsequent agreements with Austin Hardware, directly or indirectly, except to further the Business and in accordance with Austin Hardware's policies, or as required by law, use, disseminate, divulge or disclose, for any purpose whatsoever, including but not limited to subsequent employment or contracts with an entity or venture that is engaged in the same or similar Business of Austin Hardware, any Confidential Information.

51.    In furtherance of the Supply Agreement and in reliance on Forza complying with the nondisclosure and unconditional nonsolicitation obligations contained in it, Austin Hardware shared customer lists, contact information, point of sale reports, product needs, price points, and other confidential and trade secret information with Forza.

52.    Austin Hardware discussed with several of its long-term customers selling the spray adhesive glue product in an attempt to expand Austin Hardware's offerings to those customers.

53.    Austin Hardware has a vendor managed inventory ("VMI") arrangement with at least two of its customers, representing Austin Hardware's long term and deep relationships with the customers.

54.    A VMI is an arrangement whereby Austin Hardware's own employee works inside a customer's warehouse so that Austin Hardware can provide the supplies the customer needs on site.

55.    On multiple occasions, representatives from Austin Hardware introduced Forza representatives to Austin Hardware's customers so that they could demonstrate the spray adhesive to Austin Hardware's customers.

56.    After these visits, Austin Hardware's customers would engage in extensive testing of the spray adhesive glue product to determine its suitability for use in the customer's manufacturing.

57.    The process of testing and determining the suitability of the spray adhesive for customer's needs can take weeks and even months.

58.    On one occasion, an executive with Austin Hardware took representatives of Forza to visit an Austin Hardware customer in North Carolina.

59.    On another occasion, an Austin Hardware salesperson introduced representatives of Forza to Austin Hardware's largest customer of the adhesive glue product in Illinois.

60.    On another occasion, an Austin Hardware salesperson took a representative of Forza on a roughly weeklong tour of Austin Hardware's customers in the southeastern United States.

61.    Austin Hardware made these introductions based upon Forza's non-solicitation and non-disclosure obligations in the Supply Agreement and so that Austin Hardware could assist its customers in achieving their goals.

62.    Following testing and after determining that the spray adhesive was suitable for their purposes, some of Austin Hardware's customers then began purchasing the spray adhesive glue product from Austin Hardware.

93415081.7

63.     Since these introductions were directly related to the supplying of products, Austin Hardware expected that Forza would comply with the nondisclosure and nonsolicitation obligations contained in the Supply Agreement.

64.     At some point during 2023, Forza informed Austin Hardware that it was developing its own spray glue adhesive product (the "Forza Adhesive") and that it would no longer supply the adhesive glue product that Austin Hardware had sold to its customers.

65.     Forza wanted Austin Hardware to transition the adhesive glue product it was selling to the one allegedly manufactured by Forza.

66.     This presented challenges for Austin Hardware and its customers, as customers need significant periods of time to test a product before use to ensure the product meets regulatory requirements, safety standards, and functionality and durability standards.

67.     Despite these challenges and its skepticism as to the Forza Adhesive, but in an effort to work towards a conversion as a good business partner, Austin Hardware repeatedly asked Forza, pursuant to the Supply Agreement, for specification details, test data comparing the Forza Adhesive to the prior adhesive, Safety Data Sheets, Technical Data Sheets, and other similar items so that Austin Hardware could provide such information to its customers.

68.     Chemical manufacturers, which Forza was now claiming to be, are required to provide downstream users with Safety Data Sheets to ensure that employees working with or handling the chemicals, such as the Forza Adhesive, are safe and can take appropriate safety measures and precautions.

69.     Forza repeatedly failed to provide Austin Hardware with the requested information about the new Forza Adhesive and instead insisted that it was the same as the other spray adhesive

and insisted that Austin Hardware should sell the Forza Adhesive to its customers as if it was the same product.

70.     Austin Hardware refused to represent to its customers that the Forza Adhesive product was the same, or had the same capabilities, as the previous spray adhesive product, absent being provided the technical data it requested and to which it was entitled.

71.     Austin Hardware refused to make such representations without the safety and technical data it requested because it did not want to endanger its reputation as a trusted business partner with its customers.

72.     Despite Forza's insistence, Austin Hardware refused to sell to its customers the Forza Adhesive product as if it was the same spray adhesive glue product its customers previously bought.

73.     On or about December 11, 2023, Forza informed Austin Hardware that the spray adhesive manufacturer / supplier would no longer supply Forza with the spray adhesive product. Consequently therefore, Forza could no longer provide the spray adhesive product to Austin Hardware.

74.     Austin Hardware impressed upon Forza that it would need time for its customers to test and ensure that the Forza Adhesive was properly suited for use by its customers in manufacturing, was safe for the customers' employees, and that it needed the original spray adhesive in the meantime to fill existing and near-term orders.

75.     Ultimately, on December 14, 2023, Forza terminated the Supply Agreement with Austin Hardware.

76.     Forza then informed Austin Hardware that it did not have enough inventory to fulfill the placed purchase orders and "would prioritize continuing customers" of the original spray adhesive product.

77.     Since December 2023, Forza has marketed the Forza Adhesive, its own alleged adhesive product, to Austin Hardware's customers and has used it to unfairly compete with Austin Hardware and steal its customers.

### C. **Forza's Illegal Conduct**

78.     Following Forza's termination of the Supply Agreement, Forza retained confidential and trade secret information that Austin Hardware shared with it in confidence regarding Austin Hardware's customers, including, but not limited to, their identification, contact information, product needs, and current price points.

79.     Forza has knowledge of Austin Hardware's customers and the respective confidential and trade secret information such as price points as a result of the Supply Agreement and relationship between the parties.

80.     Forza is using this confidential and trade secret information to solicit Austin Hardware's customers and undercut Austin Hardware's pricing for its customers to gain a competitive and unfair advantage in the marketplace.

81.     Even if Forza were not using Austin Hardware's confidential and trade secret information to solicit Austin Hardware's customers (which it is), Forza still is violating the Supply Agreement by "sell[ing] competing or similar products to Austin Hardware's customers" despite its unconditional promise not to do so.  Ex. A, ¶ 10(a).

82.     Forza did not wait long after terminating the Supply Agreement to go after Austin Hardware's customers.   On February 2, 2024, Austin Hardware's customer ("Customer A")

contacted its Austin Hardware sales representative via email informing him that Forza through another vendor had quoted Customer A a "considerable savings" on the same or similar glue adhesive product that Austin Hardware sells to Customer A.

83.    In the February 2, 2024 email, Customer A stated that they "need [Austin Hardware] to be able to get in this range to stay competitive."

84.    Despite Austin Hardware attempting to work with Forza to help customers and grow Forza's business as well, Forza instead immediately solicited Customer A, which is one of the customers to whom Austin Hardware introduced Forza representatives.

85.    Since Forza's solicitations, Austin Hardware has been forced to drastically reduce its quoted price and margins to "stay competitive" with Forza, its former business partner.

86.    This has resulted in Austin having a reduction in gross margin of about 15% for Customer A.

87.    Forza is soliciting other customers of Austin Hardware to sell them "competing or similar products" which Forza provided to Austin Hardware under the Supply Agreement and about whom Forza was provided confidential and trade secret information.

88.    Not only is Forza violating the Supply Agreement by soliciting Austin Hardware's customers to sell them "competing or similar products," but it is also attempting to undercut Austin Hardware's prices by using its knowledge of Austin Hardware's confidential and trade secret information such as price points.

89.    There exists a commonality of ownership and interests among Forza and the Other Forza Companies such that there exists a legitimate and substantial concern that Austin Hardware's trade secret and confidential information is being shared among the Defendants.

90.    To the extent that Forza has shared any of Austin Hardware's trade secret and confidential information with or among the Other Forza Companies, then all Defendants are in possession of Austin Hardware's trade secret and confidential information.

91.    Prior to filing this Complaint, Austin Hardware sent two Cease and Desist letters to Forza concerning the matters herein.  Forza, however, has refused to cease and desist from misappropriating Austin Hardware's confidential and trade secret information, from breaching the terms of the Supply Agreement by soliciting Austin Hardware's customers to sell them "competing or similar products" and using Austin Hardware's Confidential Information, and from tortiously interfering with Austin Hardware's business relationships.

92.    Forza's conduct to date indicates it has no intention of ceasing or rectifying its violative behavior moving forward, that it likely will continue to solicit Austin Hardware's customers to sell them "competing or similar products" covered by the Supply Agreement, and that it intends to continue to use Austin Hardware's misappropriated confidential and trade secret information.

93.    Not only has Forza's actions caused monetary damage to Austin Hardware, but Austin Hardware has also suffered irreparable injury to its name, reputation, and goodwill it has established with its customers and in the industry.

94.    Austin Hardware, therefore, seeks injunctive relief against Forza prohibiting it from: (i) continuing to use Austin Hardware's confidential and trade secret information; (ii) continuing to solicit Austin Hardware's  customers to sell them "competing or similar products" which it provided under the Supply Agreement; (iii) continuing to use Austin Hardware's pricing information to undercut Austin Hardware's bids to its customers and customer accounts; (iv) continuing to breach the terms of the Supply Agreement by using Austin Hardware's confidential

pricing to compete against Austin Hardware; and (v) continuing to tortiously interfere with Austin Hardware's business relationships and expectancies.

## COUNT I
## VIOLATION OF THE IOWA UNIFORM TRADE SECRETS ACT – I.C.A. § 550.1 ET. SEQ.

95.    Austin Hardware incorporates all previous allegations and paragraphs.

96.    Austin Hardware's customer lists and other customer information are trade secrets protected by the Iowa Uniform Trade Secrets Act ("the Iowa Act").  I.C.A § 550 et. seq.  In addition, confidential information about Austin Hardware's product and service development strategies, business plans, customer lists, financial information, sales and competitive strategies, marketing strategies, revenue, margins, profits and pricing strategies are also trade secrets under the Iowa Act.

97.    Austin Hardware's confidential and trade secret information derive independent economic value from not being generally known to, and not being readily ascertainable by proper means.

98.    Austin Hardware takes reasonable measures to maintain the secrecy of its confidential and trade secret information. For example, Austin Hardware enters into non-disclosure agreements with suppliers; includes confidentiality provisions in supplier agreements; keeps its confidential and trade secret information on a protected network which requires company authorization to access; requires passwords to access such information; and limits access to such information to those individuals who require the use of the confidential information and trade secrets as part of their duties.

99.     Forza acquired Austin Hardware's confidential and trade secret information as a result of a confidential relationship into which Forza and Austin Hardware entered, as evidenced by the NDA and Supply Agreement.

100.    Austin Hardware placed its trust and confidence in Forza that it would maintain the secrecy and confidentiality of any information shared with Forza by Austin.

101.    Forza retained Austin Hardware's confidential and trade secret information and knew that its retention of the information was through improper means.

102.    Forza has used Austin Hardware's confidential and trade secret information, and at the time of its use knew or had reason to know that its use of the confidential and trade secret information was not authorized by Austin Hardware.

103.    Because there exists a commonality of ownership and interests among the Defendants there is a substantial and legitimate concern that Austin Hardware's trade secret and confidential information has been disclosed by Forza to the Other Forza Companies.

104.    The Other Forza Companies used Austin Hardware's confidential and trade secret information, and at the time of the use knew or had reason to know that the use of the confidential and trade secret information was derived through Forza who had a duty to maintain the trade secret's secrecy and limit its use.

105.    By virtue of the Supply Agreement, as well as the relationship between the Parties, Forza was under a duty not to disclose or use Austin Hardware's trade secrets.

106.    Forza used Austin Hardware's confidential and trade secret information to solicit Austin Hardware's customers, thereby breaching its duty not to disclose or use Austin Hardware's confidential and trade secret information.

93415081.7

107.    Austin Hardware has suffered and will continue to suffer damage as a result of the misappropriation.

108.    Damages alone are inadequate to remedy the situation.

109.    Pursuant to the Iowa Act, misappropriation of trade secrets such as in this case may be enjoined. In addition, Austin Hardware is entitled to monetary damages pursuant to I.C.A. § 550.3 and 550.4.

110.    Forza's misappropriation of Austin Hardware's confidential and trade secret information has been willful and malicious, thus entitling Austin Hardware to an award of exemplary damages and attorneys' fees pursuant to I.C.A. §§550.4 and 550.6.

111.    In misappropriating Austin Hardware's trade secret information, Forza acted toward Austin Hardware with willful and wanton conduct, also entitling Austin Hardware to an award of exemplary and punitive damages pursuant to I.C.A. §550.6(3).

WHEREFORE, Austin Hardware prays the Court (1) for damages adequate to compensate Austin Hardware for its harm suffered due to Forza's misappropriation of Austin Hardware's trade secrets, including, but not limited to lost profits (or disgorgement of Forza's profits), unjust enrichment caused by the misappropriation, and diminution in the value of Austin Hardware, with such damages exceeding $75,000; (2) to enter injunctive relief against Forza from further misappropriation of Austin Hardware's trade secrets; (3) for Austin Hardware's costs and attorneys' fees in pursuing this action; (4) an award of exemplary and punitive damages; and (5) whatever additional relief this Court deems just and proper.

## COUNT II
## VIOLATION OF THE MISSOURI UNIFORM TRADE SECRETS ACT – MO. REV. STAT. § 417.450 ET. SEQ.

112.    Austin Hardware incorporates all previous allegations and paragraphs.

93415081.7

113.    Austin Hardware's customer lists and other customer information are trade secrets protected by the Missouri Uniform Trade Secrets Act ("the Missouri Act").  Mo. Rev. Stat. § 417.450 et. seq.  In addition, confidential information about Austin Hardware's product and service development strategies, business plans, customer lists, financial information, sales and competitive strategies, marketing strategies, revenue, margins, profits and pricing strategies are also trade secrets under the Missouri Act.

114.    Austin Hardware's trade secrets were maintained in Missouri, and following their misappropriation, were used by Forza in Iowa and elsewhere.

115.    Austin Hardware's confidential and trade secret information derive independent economic value from not being generally known to, and not being readily ascertainable by proper means.

116.    Austin Hardware takes reasonable measures to maintain the secrecy of its confidential and trade secret information. For example, Austin Hardware enters into non-disclosure agreements with suppliers; includes confidentiality provisions in supplier agreements; keeps its confidential and trade secret information on a protected network which requires company authorization to access; requires passwords to access such information; and limits access to such information to those individuals who require the use of the confidential information and trade secrets as part of their duties.

117.    Forza acquired Austin Hardware's confidential and trade secret information as a result of a confidential relationship into which Forza and Austin Hardware entered, as evidenced by the NDA and Supply Agreement.

118.    Austin Hardware placed its trust and confidence in Forza that it would maintain the secrecy and confidentiality of any information shared with Forza by Austin.

119.    Forza retained Austin Hardware's confidential and trade secret information and knew that its retention of the information was through improper means.

120.    Forza has used Austin Hardware's confidential and trade secret information, and at the time of its use knew or had reason to know that its use of the confidential and trade secret information was not authorized by Austin Hardware.

121.    Because there exists a commonality of ownership and interests among the Defendants there is a substantial and legitimate concern that Austin Hardware's trade secret and confidential information has been disclosed by Forza to the Other Forza Companies.

122.    The Other Forza Companies used Austin Hardware's confidential and trade secret information, and at the time of the use knew or had reason to know that the use of the confidential and trade secret information was derived through Forza who had a duty to maintain the trade secret's secrecy and limit its use.

123.    By virtue of the Supply Agreement, as well as the relationship between the Parties, Forza was under a duty not to disclose or use Austin Hardware's trade secrets.

124.    Forza used Austin Hardware's confidential and trade secret information to solicit Austin Hardware's customers, thereby breaching its duty not to disclose or use Austin Hardware's confidential and trade secret information.

125.    Austin Hardware has suffered and will continue to suffer damage as a result of the misappropriation in Missouri.

126.    Damages alone are inadequate to remedy the situation.

127.    Pursuant to the Missouri Act, misappropriation of trade secrets such as in this case may be enjoined. In addition, Austin Hardware is entitled to monetary damages pursuant to Mo. Rev. Stat. § 417.455 and § 417.457.

93415081.7

128.    In misappropriating Austin Hardware's trade secret information, Forza acted toward Austin Hardware with an evil motive and reckless indifference to Austin Hardware's rights entitling Austin Hardware to an award of exemplary and punitive damages pursuant to Mo. Rev. Stat. § 417.457.

WHEREFORE, Austin Hardware prays the Court (1) for damages adequate to compensate Austin Hardware for its harm suffered due to Forza's misappropriation of Austin Hardware's trade secrets, including, but not limited to lost profits (or disgorgement of Forza's profits), unjust enrichment caused by the misappropriation, and diminution in the value of Austin Hardware, with such damages exceeding $75,000; (2) to enter injunctive relief against Forza from further misappropriation of Austin Hardware's trade secrets; (3) for Austin Hardware's costs in pursuing this action; (4) an award of exemplary and punitive damages; and (5) whatever additional relief this Court deems just and proper.

## COUNT III
## VIOLATION OF THE DEFEND TRADE SECRETS ACT - 18 U.S.C. § 1836 ET SEQ.

129.    Austin Hardware incorporates all previous allegations and paragraphs.

130.    Austin Hardware's customer lists and other customer information are trade secrets protected by the Defend Trade Secrets Act ("the DTSA").  In addition, confidential information about Austin Hardware's product and service development strategies, business plans, customer lists, financial information, sales and competitive strategies, marketing strategies, revenue, margins, profits and pricing strategies are also trade secrets under the DTSA.

131.    Austin Hardware's confidential and trade secret information derive independent economic value from not being generally known to, and not being readily ascertainable by proper means.

132.    Austin Hardware takes reasonable measures to maintain the secrecy of its confidential and trade secret information. For example, Austin Hardware entered into non-disclosure agreements with suppliers; includes confidentiality provisions in supplier agreements; keeps its confidential and trade secret information on a protected network which requires company authorization to access; requires passwords to access such information; and limits access to such information to those individuals who require the use of the confidential information and trade secrets as part of their duties.

133.    Some of Austin Hardware's trade secrets are related to the transportation and emergency response vehicle industries and are used and sold in interstate commerce.

134.    Forza acquired Austin Hardware's confidential and trade secret information as a result of a confidential relationship into which Forza and Austin Hardware entered, as evidenced by the NDA and Supply Agreement.

135.    Austin Hardware placed its trust and confidence in Forza that it would maintain the secrecy and confidentiality of any information shared with Forza by Austin.

136.    Forza retained Austin Hardware's confidential and trade secret information and knew that its retention of the information was through improper means.

137.    Forza has used Austin Hardware's confidential and trade secret information, and at the time of its use knew or had reason to know that its use of the confidential and trade secret information was not authorized by Austin Hardware.

138.    Because there exists a commonality of ownership and interests among the Defendants there is a substantial and legitimate concern that Austin Hardware's trade secret and confidential information has been disclosed by Forza to the Other Forza Companies.

139.    The Other Forza Companies used Austin Hardware's confidential and trade secret information, and at the time of the use knew or had reason to know that the use of the confidential and trade secret information was derived through Forza who had a duty to maintain the trade secret's secrecy and limit its use.

140.    By virtue of the Supply Agreement, as well as the relationship between the Parties, Forza was under a duty not to disclose or use Austin Hardware's trade secrets.

141.    Forza used Austin Hardware's confidential and trade secret information to solicit Austin Hardware's customers, thereby breaching its duty not to disclose or use Austin Hardware's confidential and trade secret information.

142.    Forza acquired, disclosed, and/or used Austin Hardware's trade secrets through improper means and without the permission of Austin Hardware.

143.    For example, Forza has met with established customers of Austin Hardware without authorization by Austin Hardware, the identities of which are trade secret and confidential information.

144.    Forza has also utilized Austin Hardware's trade secret information such as pricing and pricing strategies to undercut Austin Hardware in bids to Austin Hardware's customers.

145.    As a direct and proximate result of Forza's actions, Austin Hardware has been and will continue to be damaged.

146.    Austin Hardware has no adequate remedy at law to stop the continued damage Forza has caused by its unlawful conduct, as Austin Hardware's injuries cannot be fully quantified, and the balance of equities and public interest favor entering preliminary injunctive relief against Forza.

93415081.7

147.    Austin Hardware is therefore entitled to preliminary and permanent injunctive relief against Forza to enjoin actual or threatened misappropriation, use, and/or dissemination of its Confidential Information and trade secrets; to prevent Forza from continuing to profit from the past use of Austin Hardware's wrongfully procured Confidential Information and trade secrets; and to prevent Forza from continuing to serve Austin Hardware customers that it, but for Forza's breaches of the Supply Agreement and NDA, would not have obtained.

148.    Additionally, as a direct and proximate result of the wrongful conduct of Forza, Austin Hardware has been irreparably harmed and will continue to be irreparably harmed through the loss of established Austin Hardware clients, goodwill, revenues, and profits; and diminution in the value of its business.

149.    Unless Forza is enjoined, this misconduct will continue, and Forza will continue to cause Austin Hardware to suffer losses, including the retention, disclosure and impermissible use of its confidential information and trade secrets, and the loss of established clients, future revenues and goodwill, to the irreparable injury of Austin Hardware.

WHEREFORE, Austin Hardware prays the Court (1) for damages adequate to compensate Austin Hardware for its harm suffered due to Forza's misappropriation of Austin Hardware's trade secrets, including, but not limited to lost profits (or disgorgement of Forza's profits), unjust enrichment caused by the misappropriation, and diminution in the value of Austin Hardware, with such damages exceeding $75,000; (2) to enter injunctive relief against Forza from further misappropriation of Austin Hardware's trade secrets; (3) for Austin Hardware's costs and attorneys' fees in pursuing this action; (4) an award of exemplary and punitive damages; and (5) whatever additional relief this Court deems just and proper.

## COUNT IV
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

150.    Austin Hardware incorporates all previous allegations and paragraphs.

151.    Austin Hardware has spent considerable time, energy and expense developing relationships with customers which constitute valid business expectancies.

152.    Austin Hardware expected to continue selling to these customers.

153.    By virtue of the Supply Agreement and NDA, Forza had knowledge of these relationships and improperly used this knowledge to solicit Austin Hardware's customers.

154.    Austin Hardware even introduced Forza to its customers on multiple occasions.

155.    Forza is using the identity and confidential and trade secret information about those relationships to its benefit and to Austin Hardware's detriment.

156.    Forza has intentionally interfered with Austin Hardware's relationships and business expectancies by using Austin Hardware's confidential information to contact, solicit, and undercut Austin Hardware.

157.    As a result of Forza's intentional interference, Austin Hardware's customers have requested price reductions that have reduced Austin Hardware's margins resulting in an increased economic burden on Austin Hardware.

158.    Forza's actions were improper and not justified, and it acted with malice toward Austin Hardware.

159.    Forza's interference with those relationships has caused immediate and irreparable harm to Austin Hardware.

160.    As a result of Forza's wrongful interference with those relationships, Austin Hardware has been and will continue to be harmed.

93415081.7

161.    In interfering with Austin Hardware's vendor and customer relationships and business expectancies, Forza acted toward Austin Hardware with willful and wanton conduct and legal malice entitling Austin Hardware to an award of exemplary and punitive damages.

WHEREFORE, Austin Hardware prays the Court (1) for damages adequate to compensate Austin Hardware for its harm suffered due to Forza's tortious interference, including, but not limited to, lost profits and diminution in the value of Austin Hardware, with such damages exceeding $75,000; (2) for Austin Hardware's costs in pursuing this action; (3) for an award of exemplary and punitive damages; and (4) whatever additional relief this Court deems just and proper.

## COUNT V
## BREACH OF SUPPLY AGREEMENT

162.    Austin Hardware incorporates all previous allegations and paragraphs.

163.    On April 7, 2023, Austin Hardware and Forza entered into a valid and enforceable Supply Agreement.

164.    Pursuant to the Supply Agreement, Confidential Information is defined as:

Austin Hardware's lists of customers and accounts, products, systems, procedures, customer contact information, lists of identity of key personnel assigned to accounts, price points, business goals, business techniques, policies, manuals, advertising, marketing plans, business and marketing strategies, trade secrets, business plans, financial data, strategies, methods of conducting business, price lists, formulas, processes, procedures, standards, know-how, manuals, techniques, technology, confidential reports and all other information.

165.    Pursuant to paragraph 10(a) of the Supply Agreement: "Forza shall further not disclose Confidential Information to any third party, *nor use that information*, directly or indirectly, other than as contemplated by this Agreement, without the express written consent of Austin Hardware."

93415081.7

166.    Also pursuant to paragraph 10(a) of the Supply Agreement, Forza unconditionally agreed that, after the termination of the Supply Agreement, it would not "sell competing or similar products to Austin Hardware's customers."

167.    Pursuant to paragraph 10(b) of the Supply Agreement:

> Forza covenants and agrees that he shall not, at any time during or following the term this Agreement or subsequent agreements with Austin Hardware, directly or indirectly, except to further the Business and in accordance with Austin Hardware's policies, or as required by law, use, disseminate, divulge or disclose, for any purpose whatsoever, including but not limited to subsequent employment or contracts with an entity or venture that is engaged in the same or similar Business of Austin Hardware, any Confidential Information.

168.    As previously mentioned, Austin Hardware has already been informed by one of its customers that Forza is now selling adhesive glue cannisters to Austin Hardware's customers in violation of paragraph 10(a) of the Supply Agreement.

169.    If that is not enough, Forza is using Austin Hardware's confidential and trade secret pricing information to sell products to Austin Hardware's customers.

170.    Forza's solicitation of Austin Hardware's customers to sell them competing or similar products as it sold under the Supply Agreement is a clear and direct violation of the Supply Agreement.

171.    Forza's use of that information is a clear and direct violation of the Supply Agreement.

172.    Austin Hardware has been damaged by Forza's breach and violation of the Supply Agreement.

173.    Damages alone are inadequate to remedy the situation.

174.    As a direct and proximate result of the wrongful conduct of Forza, Austin Hardware has been irreparably harmed and will continue to be irreparably harmed through the ongoing

breaches of Forza, loss of Austin Hardware clients, goodwill, revenues, and profits; impairment of future earning capacity; and diminution in the value of its business.

175.     Unless Forza is enjoined, its ongoing breaches of contractual obligations will continue, and Forza will continue to cause Austin Hardware to suffer losses, including the retention, disclosure and impermissible use of its confidential information and trade secrets, and the loss of established clients, future revenues and goodwill, to the irreparable injury of Austin Hardware

WHEREFORE, Austin Hardware prays the Court (1) for damages adequate to compensate Austin Hardware for its harm suffered due to Forza's violation and breach of the Supply Agreement, including, but not limited to, lost profits (or disgorgement of profits) and diminution in the value of Austin Hardware, with such damages exceeding $75,000; (2) to enter injunctive relief against Forza from further violation and breach of the Supply Agreement; (3) for Austin Hardware's costs in pursuing this action; (4) for an award of exemplary and punitive damages; and (5) whatever additional relief this Court deems just and proper.

## COUNT VI
## UNJUST ENRICHMENT

176.     Austin Hardware incorporates all previous allegations and paragraphs.

177.     Forza has been unjustly enriched by its unlawful retention and use of Austin Hardware's trade secrets and confidential information.

178.     Specifically, Forza has been enriched by retaining a treasure trove of customer related information that it did not have to develop on its own, such as the identity, contact information, product needs, and price points for various Austin Hardware customers.

179.     Forza is still being enriched and will continue to be enriched by receiving economic benefit from the use of Austin Hardware's confidential and trade secret information.

93415081.7

180.    By retaining Austin Hardware's confidential and trade secret information, Forza has been enriched at the expense of Austin Hardware as a newly emerged competitor has access to Austin Hardware's confidential and trade secret information.

181.    It is unjust for Forza to retain the benefits from the unlawful retention and use of Austin Hardware's confidential and trade secret information.

182.    As a direct and proximate result of  Forza's wrongful conduct, Austin Hardware has suffered damages and will continue to suffer damages through the loss of established Austin Hardware clients, goodwill, revenues, and profits; impairment of future earning capacity; and diminution in the value of its business.

WHEREFORE, Austin Hardware prays that the Court enter its order for (1) damages adequate to compensate Austin Hardware for its harm suffered due to Forza's unjust enrichment, including, but not limited to, disgorgement of  profits, economic savings to Forza in not having to expend money to develop the customers, customer lists and trade secrets, and the increase in the value of Forza, with such damages exceeding $75,000; (2) Austin Hardware's costs in pursuing this action; (3) an award of exemplary and punitive damages; and (4) whatever additional relief this Court deems just and proper.

## JURY DEMAND

Austin Hardware requests trial by jury.

## DESIGNATION OF PLACE OF TRIAL

Austin Hardware requests Council Bluffs, Iowa as the place of trial.

93415081.7

Respectfully submitted,

POLSINELLI PC


By: */s/ Denise K. Drake*
    DENISE K. DRAKE (IA # AT0008741)
    ERIC E. PACKEL
    *Pro hac vice forthcoming*
    ISAAC T. CAVERLY
    *Pro hac vice forthcoming*
    900 W. 48th Place, Suite 900
    Kansas City, MO 64112
    Telephone: (816) 753-1000
    Facsimile: (816) 753-1536
    ddrake@poilsinelli.com
    epackel@polsinelli.com
    icaverly@polsinelli.com

    ATTORNEYS FOR PLAINTIFF AUSTIN
    HARDWARE & SUPPLY, INC.

93415081.7

STATE OF _Missouri_ )
                                      ) ss
COUNTY OF _Jackson_ )

## VERIFICATION

Comes Now _Jack Dudenhoeffer_ , being duly sworn and under oath, and states that

s/he is the _Sales Manager_ of Austin Hardware & Supply, Inc., and that s/he has read the

foregoing Verified Complaint. Affiant further states that s/he has personal knowledge of the facts

alleged therein, and that the facts stated in the Verified Complaint are true and accurate to the best

of his/her knowledge and belief.

DATED: _3-1-2024_

On this _1st_ day of _March_ , personally appeared the above-named

_Jack Dudenhoeffer_ being duly sworn and to me persoanlly known, and acknowledged the

foregoing to be his/her free act and deed before me.

_Christina Lyons_
NOTARY PUBLIC

My Commission Expires:

_10/26/2026_
[SEAL]

CHRISTINA LYONS
Notary Public-Notary Seal
STATE OF MISSOURI
Cass County
My Commission Expires 10/26/2026
Commission # 08495041

30

93415081.7